# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC, <br><br> Plaintiff, <br><br> v. <br><br> Redfin Corporation, <br><br> Defendant. | Civil Action No. 4:21-cv-00945-ALM <br><br> Jury Trial Demanded |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I. ARGUMENT ........................................................................................................................1

    A. Public Interest Factors................................................................................................1

        i. The administrative difficulties flowing from court congestion in NDCA weigh against transfer ................................................................2

        ii. Each District at issue maintains an interest in deciding the issues of this case ................................................................................................3

    B. Private Interest Factors ..............................................................................................6

        i. The relative ease of access to sources of proof does not favor transfer ................................................................................................6

        ii. Redfin has not shown that compulsory process is available for more unwilling witnesses in NDCA than in this Court.........................................8

        iii. The cost of attendance for willing witnesses is neutral .............................10

        iv. Practical problems that make a trial easy, expeditious, and inexpensive weigh heavily against transfer ................................................11

II. CONCLUSION...................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases:**                                                                                                                                              **Page(s):**

*Adaptix, Inc. v. Cellco P'ship*,
   2015 U.S. Dist. LEXIS 186704 (E.D. Tex. Aug. 12, 2015) ........................................................ 8

*Centre One v. Vonage Holdings, Corp.*,
   2009 U.S. Dist. LEXIS 69683 (E.D. Tex. Aug. 10, 2009) ........................................................ 12

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*,
   2016 U.S. Dist. LEXIS 100825 (E.D. Tex. Aug. 2, 2016) ......................................................... 3

*Cypress Lake Software, Inc. v. HP Inc.*,
   2018 U.S. Dist. LEXIS 231553 (E.D. Tex. June 27, 2018) ................................................. 8, 10

*Dong Sik Yoo v. Kook Bin Im*,
   2018 U.S. Dist. LEXIS 11246 (E.D. Tex. Jan. 24, 2018) .......................................................... 7

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   2017 U.S. Dist. LEXIS 26755 (E.D. Tex. Feb. 27, 2017) ........................................................ 10

*iFly Holdings LLC v. Indoor Skydiving Germany GMBH*,
   2015 U.S. Dist. LEXIS 136537 (E.D. Tex. Oct. 7, 2015) .......................................................... 4

*In re Apple, Inc.*,
   581 Fed. Appx. 886 (Fed. Cir. 2014) ........................................................................................ 8

*In re Apple, Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ................................................................................................ 6

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) .......................................................................................... 11

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................................ 2

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) .............................................................................................. 11

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .................................................................................................... 6

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1351 (Fed. Cir. 2009) ........................................................................................ 11, 12

*Knapper v. Safety Kleen Sys.*,
   2009 U.S. Dist. LEXIS 30118 (E.D. Tex. Apr. 3, 2009) ............................................................. 6

*KT Imaging USA, LLC v. HP Inc.*,
   2021 U.S. Dist. LEXIS 35071 (E.D. Tex. Feb. 25, 2021) ............................................. 3, 7, 8, 9

*Net Navigation Sys. v. Alcatel-Lucent U.S.*,
   2012 U.S. Dist. LEXIS 204069 (E.D. Tex. Aug. 24, 2012) ...................................................... 12

*Oxysure Sys. v. Castaldo*,
   2016 U.S. Dist. LEXIS 32905 (E.D. Tex. Mar. 15, 2016) .......................................................... 3

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981) .................................................................................................................... 1

*R2 Sols. LLC v. Target,*
   2021 U.S. Dist. LEXIS 115683 (E.D. Tex. June 22, 2021) ........................................................ 1

*Shawn Massey Farm Equip., Inc. v. Claas of Am., Inc.*,
   2012 U.S. Dist. LEXIS 1855941 (E.D. Tex. Dec. 19, 2012) ...................................................... 5

*Stingray IP Solutions, LLC v. Amazon.com, Inc.,*
   Case No. 2:21-cv-00201, ECF 90 (E.D. Tex. Mar. 25, 2022) ..................................................... 2

*Uniloc U.S. v. Huawei Device U.S.*,
   2018 U.S. Dist. LEXIS 234545 (E.D. Tex. Sept. 6, 2018) .......................................................... 8

*VCode Holdings, Inc. v. Cognex Corp.,*
   2007 U.S. Dist. LEXIS 56672 (E.D. Tex. Aug. 3, 2007) ............................................................ 1

**Rules, Statutes and Regulations:**

28 U.S.C. § 1404(a) ........................................................................................................................ 11

Fed. R. Civ. P. 45(c)(1)(B) ............................................................................................................... 9

R2 Solutions LLC previously filed suit against eight distinct companies in this Court, and the Court issued a detailed claim construction order as to three of the patents asserted against Redfin here. R2 Solutions has since filed suit against five more companies, including Redfin. Those cases are pending in this Court. *See* Case Nos. 4-21-cv-00940; -00942; -00943; -00944; and -00945. This Court has already expended significant effort and resources as to the technology and claim construction issues presented by the patents-in-suit. Redfin now asks this Court to transfer this case to the Northern District of California ("NDCA"), creating two parallel litigations that must resolve overlapping issues. While a transfer to California may be convenient for Redfin because that is where some Redfin employees work, this District is also home to Redfin. Redfin has not shown that the public and private interest factors clearly favor transfer.

**I.   ARGUMENT**

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Courts in this District typically treat two of the public interest factors as neutral in patents cases: (1) familiarity of the forum with the law that will govern the case; and (2) the avoidance of unnecessary problems of conflicts of law. *See, e.g.*, *VCode Holdings, Inc. v. Cognex Corp.*, 2007 U.S. Dist. LEXIS 56672, at *10–11 (E.D. Tex. Aug. 3, 2007). Redfin has not shown that the two remaining public interest factors and the four private interest factors clearly weigh in favor of transfer.

**A.  Public Interest Factors**

This Court treats two of the four public interest factors as neutral in most patent litigation matters. Of the two remaining factors, one weighs strongly against transfer—the administrative

difficulties flowing from court congestion. The other—the local interest in having local issues decided at home—is, at least, neutral.

> i. **The administrative difficulties flowing from court congestion in NDCA weigh against transfer.**

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). The right to a prompt adjudication is not limited to manufacturing entities, s*ee Stingray IP Solutions, LLC v. Amazon.com, Inc.*, Case No. 2:21-cv-00201, ECF 90 at 15 (E.D. Tex. Mar. 25, 2022), and evidence of a significantly longer time to trial in NDCA (relative to EDTX) and this Court's ability to better handle an ongoing pandemic weighs strongly against transfer.

Specifically, the median time to trial for *patent* cases since 2016 is approximately eighteen months longer in NDCA than EDTX (3.58 years in NDCA versus 2.05 years in EDTX). *See* Ex. A.[1] Redfin failed to address this substantial disparity by relying on Federal Court Management Statistics that suggest EDTX's ability to reach trial in *civil* cases is roughly only four to eight months better than NDCA. Mot. at 13-14; Mot. at Ex. 34.[2] Redfin thus characterized the difference as insignificant. Mot. at 13-14. But eighteen months for *patent* cases is not insignificant, and this difference would only be exacerbated by the administrative lag caused by transfer.

Notably, Judge Mazzant conducted patent jury trials during the pandemic in August 2020, March 2021, and April 2021, respectively. *See* Case No. 4:18-cv-00474, ECF 822; Case No. 4:18-cv-00469, ECF 446; Case No. 4:08-cv-00451, ECF 808. This is the *same* number of patent trials

---

[1] All lettered Exhibits are attached to the Declaration of John Murphy, which is included with this Response as Exhibit 1.
[2] Citations in this Response to "Mot." refer to Defendant Redfin's Motion to Transfer (ECF 15).

conducted by the entire NDCA in 2020 and 2021.[3] Comparatively, EDTX courts conducted over twenty patent jury trials in that same time frame.[4] *See also, KT Imaging USA, LLC v. HP Inc.*, 2021 U.S. Dist. LEXIS 35071, at *15–16 (E.D. Tex. Feb. 25, 2021). In essence, EDTX courts resumed jury trials long ago and have continued to push cases toward trial in an efficient manner. Given demonstrable delays that a transfer to NDCA would create, and this Court's demonstrated ability to remain open in the face of a pandemic, this factor weighs heavily against transfer.

>    ii.  **Each District at issue maintains an interest in deciding the issues of this case.**

R2 Solutions' presence in this District gives this Court an interest in deciding this case, and Redfin's presence in San Francisco gives NDCA an interest in deciding this case. *See Oxysure Sys. v. Castaldo*, 2016 U.S. Dist. LEXIS 32905, at *14 (E.D. Tex. Mar. 15, 2016) (finding this factor neutral under similar circumstances). But Redfin *also* makes this District its home, enhancing this Court's interest. *See* ECF 1 (Complaint), at ¶¶ 2, 4, 6. And it bears mention that Redfin is a Delaware corporation with its corporate headquarters located outside the State of California. *See* Ex. B. R2 Solutions has no ties to NDCA.

Moreover, R2 Solutions is a Texas LLC seeking to enforce its patents in this State. *See Cooktek Induction Sys., LLC v. I/O Controls Corp.*, 2016 U.S. Dist. LEXIS 100825, at *9 (E.D.

---

[3] **2020**: No patent jury trials. **2021**: Case No. 4:17-cv-04405, ECF 531; Case No. 4:18-cv-00939, ECF 24; Case No. 3:19-cv-03770, ECF 512.
[4] **2020**: Case No. 2:18-cv-00366, ECF 252; Case No. 2:19-cv-00066, ECF 460; Case No. 4:18-cv-00474, ECF 822; Case No. 2:19-cv-00070, ECF 464; Case No. 2:19-cv-00123, ECF 315; Case No. 6:12-cv-00855, ECF 962; Case No. 2:19-cv-00090, ECF 425. **2021**: Case No. 4:18-cv-00469, ECF 446; Case No. 2:19-cv-00152, ECF 330; Case No. 2:15-cv-01366, ECF 557; Case No. 2:19-cv-00209, ECF 286; Case No. 4:08-cv-00451, ECF 808; Case No. 2:19-cv-00300, ECF 286; Case No. 2:19-cv-00200, ECF 272; Case No. 2:19-cv-00347, ECF 340; Case No. 6:19-cv-00059, ECF 212; Case No. 2:18-cv-00100, ECF 679; Case No. 2:20-cv-00030, ECF 482; Case No. 2:20-cv-00004, ECF 230; Case No. 2:19-cv-00066, ECF 672; Case No. 2:19-cv-00248, ECF 337; Case No. 2:19-cv-00395, ECF 509.

Tex. Aug. 2, 2016) ("Because Plaintiff is located in Texas, and the owner of the patent at issue, this case does have a significant connection to this district."); *see also iFly Holdings LLC v. Indoor Skydiving Germany GMBH*, 2015 U.S. Dist. LEXIS 136537, at *13 (E.D. Tex. Oct. 7, 2015) ("Texas residents have a strong interest in deciding a patent infringement dispute involving a patent owned by a Texas company."). R2 Solutions was formed in Texas in 2016, and it has maintained places of business in Austin, Texas and/or in this District the entire time. *See* Exs. C-F; Ex. 2 at ¶¶ 2-4, 6-7.[5] Contrary to Redfin's assertions, R2 Solutions has more than nominal ties here. R2 Solutions conducts business activities in EDTX and this State in the form of, at least, management of R2 Solutions' substantial patent portfolio of over 2,000 U.S. patents (and 5,000 patents worldwide) and substantial licensing efforts. Ex. 2 at ¶ 11. Such business activities are spearheaded and carried out by R2 Solutions' President, Craig Yudell, who maintains a work address in this District and works extensively from his residence in Austin. *Id*. at ¶¶ 7, 11. Indeed, while R2 Solutions may not boast the same name recognition, number of employees, or nationwide presence as Redfin, its business activities cannot be ignored. Both R2 Solutions and its predecessor-in-interest to the asserted patents, a business called Excalibur IP, LLC with Texas ties, have negotiated dozens of licenses for R2 Solutions' portfolio outside of litigation. *Id*. at ¶¶ 9-11. Those licensing efforts are ongoing, and R2 Solution plans to continue its patent enforcement and non-litigation licensing efforts in this District and this State. *Id*. at ¶ 12. In fact, many of the patents in R2 Solutions' portfolio do not expire until the 2030s. *Id*. at ¶ 11.

Relevant activities are not simply localized in NDCA, as Redfin suggests. Redfin maintains a significant business presence in Texas and this District at its Frisco engineering hub. *See* Ex. G

---

[5] Exhibit 2 to this Response is the Declaration of Craig Yudell, R2 Solutions' President.

at 1 (demonstrating that Redfin considers the Frisco engineering hub as one of Redfin's headquarter locations); *see also* Ex. H (352 Redfin employees located in the Dallas-Fort Worth area compared to 494 Redfin employees located in the San Francisco Bay area); Ex. I (article discussing Redfin opening an engineering office in Frisco, Texas); Ex. J (article discussing Redfin expanding its Frisco engineering office by nearly 40,000 square feet); ECF 1 at ¶¶ 2-4, 6-9. And Redfin's business practices in NDCA are not necessarily localized interests because, even if some products may have been designed and developed there (as well as in Seattle), such activities are not exclusively the events giving rise to this suit. Indeed, residents in this District access and invoke the Redfin systems accused of infringement in this case, *see* ECF 1 at ¶ 9, and Redfin omits from its Motion any mention of the actual location(s) of the accused systems. Thus, it is just as plausible that the accused systems are located in this District as anywhere else in the country. The best Redfin can muster is that it keeps *copies* of source code in Redfin's Seattle and San Francisco offices. *See* Mot. at Ex. B, ¶ 12.

That this action calls into question the work and reputation of Redfin and its employees does not tip the scales in favor of transfer, especially when this action also calls into question the work and reputation of Redfin and its employees that reside in this District and in the greater Dallas-Fort Worth area. *See Shawn Massey Farm Equip., Inc. v. Claas of Am., Inc.*, 2012 U.S. Dist. LEXIS 1855941, at *17 (E.D. Tex. Dec. 19, 2012) (finding this factor neutral because the Eastern District of Texas has an interest in protecting the rights of its citizens just as the proposed transfer District would have an interest in adjudicating suits calling into question the reputation of its residents). This is a case with substantial local ties to this District on both sides. The same is not true for NDCA; thus, EDTX has an equal, if not greater, interest in hearing this case.

B.     **Private Interest Factors**

The private interest factors do not counterbalance the public interest factors, which weigh against transfer. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Here, the first, second, and third factors are, at least, neutral. The fourth factor weighs heavily against transfer.

i.     **The relative ease of access to sources of proof does not favor transfer.**

This factor considers "documents and physical evidence," not witnesses. *See In re Apple Inc.*, 979 F.3d 1332, 1339-40 (Fed. Cir. 2020). Although Redfin has shown that it keeps copies of source code and other documents in Seattle and San Francisco, Redfin has not shown that evidence is meaningfully more accessible in NDCA than this District. *See* Mot. at 8-9. Most of its evidence, if not all of it, is stored on servers that can likely be accessed anywhere. Even if Redfin has physical evidence that is relevant to this case, it has not shown as much. Evidence in this case is clearly scattered about the country, and transfer of this case will not improve access to relevant proof. *See Knapper v. Safety Kleen Sys.*, 2009 U.S. Dist. LEXIS 30118, at *28 (E.D. Tex. Apr. 3, 2009) (finding that evidence was not particularly accessible in the current venue or the proposed transfer venue).

Redfin does not address with specificity how or where it stores its documents, apart from a self-serving statement from a Redfin declarant that lends little in terms of how to analyze this factor. The declarant stated, "Almost all of the documents relevant to the Search Experience Team's work … are either physically in, or electronically accessible from, Redfin's San Francisco office." *See* Mot. at Ex. B, ¶ 12. Given its scattered office and employee locations, it follows that

6

Redfin must store relevant proof in a cloud environment accessible anywhere, including from Redfin's Frisco engineering office. "Storing documents in a cloud setting reduces the burden of transporting documents to a selected venue." *KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at *6. Indeed, such proof must necessarily be accessible outside of California because certain employees identified by Redfin reside outside of California. *See* Mot. at Ex. B, ¶ 7, 11.

Redfin also does not assert that there are any relevant documents that cannot be accessed in this District, and it does not identify with any specificity what evidence is physical evidence, preventing this Court from properly evaluating the burden of transporting it to this District. Even if there are physical documents, Redfin has not established that such documents are so voluminous as to present a burden to transport them to EDTX. *See Dong Sik Yoo v. Kook Bin Im*, 2018 U.S. Dist. LEXIS 11246, 2018 WL 549957, at *7 (E.D. Tex. Jan. 24, 2018) ("[T]he location of documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'") (citations omitted). And as for source code, it does not require transport to either venue. Source code will be made available for inspection wherever necessary, and the parties will then retain sets of physical printouts.

As to Yahoo! personnel and inventors who may be located in NDCA, it is pure speculation that any of them currently possess any documents relevant to this case. And substantially all (if not all) of R2 Solutions' documents are presently located on servers at the offices of its outside counsel in Fort Worth. *See* Ex. 2 at ¶ 14, Ex. 1 at ¶ 14. Such documents include information relevant to patent prosecution, ownership, infringement, damages (such as license agreements involving the asserted patents), and validity (including various asserted prior art). *Id*. None of these documents are located in NDCA. *Id*.

7

In sum, the evidence Redfin says is located in NDCA relates to electronic documents that are likely easily accessible in either District. Because "substantial evidence can be easily accessed in either [district] … this factor is neutral." *KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at *9.

### ii. Redfin has not shown that compulsory process is available for more unwilling witnesses in NDCA than in this Court.

The party seeking transfer bears the burden of identifying unwilling witnesses who would benefit from transfer. *Uniloc U.S. v. Huawei Device U.S.*, 2018 U.S. Dist. LEXIS 234545, at *8 (E.D. Tex. Sept. 6, 2018); *see also In re Apple, Inc.*, 581 Fed. Appx. 886, 891 (Fed. Cir. 2014) ("[I]t is the burden of the party seeking transfer to show (1) that the witnesses would be unwilling to travel to the transferor district and (2) that the witnesses' testimony would be important to the issues at trial." (Bryson, J., dissenting)). Redfin has not shown that NDCA has compulsory process over material, unwilling witnesses. While Redfin identified former employees that are within NDCA's subpoena power, Redfin "has not indicated whether it reasonably expects to call any of these witnesses at trial or depose them, whether they would be unwilling witnesses, or the nature of the testimony these witnesses would give." *Cypress Lake Software, Inc. v. HP Inc.*, 2018 U.S. Dist. LEXIS 231553, at *10 (E.D. Tex. June 27, 2018). As to non-party witnesses, Redfin failed to identify their relevance. To properly weigh this factor, "litigants should not only specifically identify potential unwilling witnesses, but also should identify the relevancy and materiality of the information such witnesses would provide and therefore the foreseeability that a particular witness would be deposed, called to trial, or both." *Adaptix, Inc. v. Cellco P'ship*, 2015 U.S. Dist. LEXIS 186704, at *11 (E.D. Tex. Aug. 12, 2015).

The same is true as to "any relevant Acacia non-party witness in Southern California." *See* Mot. at 10. As to non-party witnesses in Southern California, Redfin acknowledges that NDCA would only have compulsory process over them if they would not incur substantial expense. *Id*.

8

But travel from Southern California to Northern California would likely require these non-party witnesses to incur substantial expense.

In contrast, this Court has compulsory process over at least one unwilling witness who R2 solutions intends to depose and/or call to trial. Federal courts may compel a witness's attendance at trial, hearing, or deposition by subpoena if the court is located in the same state where the witness "resides, is employed, or regularly transacts business in person, if the person … is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). Paul Reidy resides in Texas and possesses evidence relevant to R2 Solutions' damages case. Ex. 2 at ¶¶ 3-6, 8-10; Ex. K. Mr. Reidy was the President of Excalibur IP, LLC ("Excalibur"). Ex. K. The patents-in-suit were previously owned by Excalibur, and Mr. Reidy previously owned R2 Solutions. Ex. D; Ex. 2 at ¶¶ 3, 6, 8. Mr. Reidy negotiated licensing agreements involving the patents-in-suit while they were owned by Excalibur. Ex. 2 at ¶¶ 5, 9-10. This information is highly relevant to evaluating the damages that R2 Solutions is owed by virtue of Redfin's infringing activities.

Traveling from Austin to Sherman will not cause Mr. Reidy to incur substantial expense in comparison to traveling to California. *See KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at * 10–11 ("While Spring is at least four hours away by car from Sherman, it is easier for Spring employees to drive a few hours than to fly to another state."). If this Court determines that the distance between Austin and Sherman is so great that it would inflict substantial expense on Mr. Reidy, R2 Solutions will pay Mr. Reidy's travel expenses. *See id.* at * 10–11 (E.D. Tex. Feb. 25, 2021) ("As KTI pledges to pay expenses for those non-East Texas HP witnesses, they would not incur a substantial expense.").

Thus, compulsory process is available in this District for at least one unwilling, material third-party witnesses. Because it is unclear what information the individuals identified by Redfin

may have, or whether they will play any role in this case, these individuals do not shift the balance in favor of transfer. This factor weighs against transfer because this Court can secure compulsory process over at least one material, unwilling witness, while Redfin has failed to establish that compulsory process is available over any material, unwilling witness in NDCA.

### iii. The cost of attendance for willing witnesses is neutral.

Redfin has not identified any willing, non-party witnesses for whom NDCA will be more convenient than EDTX. Although Redfin identified employees in California that are part of the Search Experience team, their presence should only be afforded nominal weight in the transfer analysis because they are party witnesses. The convenience to non-party witnesses is afforded greater weight. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 U.S. Dist. LEXIS 26755, at * 17 (E.D. Tex. Feb. 27, 2017). Thus, the extent to which this factor may weigh in Redfin's favor is minimal.

In fact, apart from Redfin's declarant, Mr. Chang Liu, who states that he has information relevant to this case, none of the other Redfin employees are identified as having relevant information. *See* Mot. at Ex. B, ¶¶ 7-8, 10. Those employees are merely identified as being part of the Search Experience Team, and Redfin offers no explanation regarding the nature or relevance of the information they possess, if any. *Id*.

Redfin also does not identify whether any Redfin employee would actually be called to testify. Mot. at 10-12. As this Court stated in *R2 Sols. LLC v. Target Corp.*, "Although [Defendant] argues this should heavily favor transfer, [Defendant] does not identify whether any of [its] employees 'would actually be called to testify' or describe 'the importance and relevance of their testimony.'" 2021 U.S. Dist. LEXIS 115683, at *8-9 (E.D. Tex. June 22, 2021) (quoting *Cypress Lake Software, Inc. v. HP Inc.*, 2018 U.S. Dist. LEXIS 231553, at *13-14 (E.D. Tex. June 27, 2018)). This undercuts Redfin's arguments. *See id.* at *9.

10

As for R2 Solutions, Craig Yudell is its President, and he will willingly testify at trial. Ex. 2 at ¶¶ 2, 15. Mr. Yudell lives in Austin, Texas, so travel for trial in Sherman, Texas is far more convenient for him than NDCA. *Id.* at ¶¶ 7, 16. He has relevant and extensive knowledge of, and firsthand experience with, at least: (i) the R2 Solutions patent portfolio; (ii) company ownership, operations, and financials; and (iii) the licensing of the asserted patents. *Id.* at ¶ 13.

For the foregoing reasons, this factor does not favor transfer.

### iv. Practical problems that make a trial easy, expeditious, and inexpensive weigh heavily against transfer.

Transferring this case to NDCA will create significant diseconomies. "[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) (quoting *In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). Indeed, this Court has substantial experience with three of the patents-in-suit based on prior litigation, "which included a [multi-party, multi-patent claim construction] hearing and lengthy opinion construing various claim terms." *Id.* at 1344. This Court issued an eighty-page claim construction order involving three of the patents-in-suit on January 4, 2022. *See, e.g.,* Case No. 4:21-cv-00090, ECF 45.

It is entirely proper for the Court to "consider any judicial economy benefits which would have been apparent at the time the suit was filed," such as the imminent claim construction proceedings in the prior litigation. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (non-precedential). Furthermore, the patents asserted against Redfin overlap substantially with the related cases pending in this Court. Each of the pending cases involves at least two (and often

11

three) overlapping patents related to search functionality;[6] thus, transferring Redfin's case to NDCA may result in critically inconsistent findings regarding claim construction, infringement, and validity. At bottom, this Court should avoid creating a scenario where NDCA "would be required to conduct duplicative proceedings regarding [for instance] claim construction, expert discovery, and other issues." *Net Navigation Sys. v. Alcatel-Lucent U.S.*, 2012 U.S. Dist. LEXIS 204069, at *15 (E.D. Tex. Aug. 24, 2012).

It follows that transferring this case to NDCA wastes judicial resources by making different courts preside simultaneously over cases involving the same subject matter. *See In re Volkswagen*, 566 F.3d at 1351 (denying mandamus of an EDTX decision declining transfer because the court's decision was "based on the rational argument that judicial economy is served by having the same district court try cases involving the same patents"). "Although these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Id*.

In sum, this Court is positioned to most efficiently deal with the complex issues of the five pending cases by keeping them together. Redfin's Motion may be denied on this basis alone. *See Centre One v. Vonage Holdings, Corp.*, 2009 U.S. Dist. LEXIS 69683, at *24 (E.D. Tex. Aug. 10, 2009) (holding that the defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora"). Indeed, this Court has already expended significant resources familiarizing itself with three of the patents-in-suit. It would be wholly inefficient for multiple districts across the country to resolve similar disputes based on the same patents. Accordingly, this factor weighs heavily against transfer.

---

[6] *Compare* Case No. 4:21-cv-00945, ECF 1, *with* ECF 1 in each of Case Nos. 4:21-cv-00940, -00942, -00943, and -00944.

12

## II. CONCLUSION

Redfin has not demonstrated that the public and private factors weigh in favor of transfer. Significantly, the private interest in judicial efficiency and the balance of public interest factors weigh heavily against transfer. Accordingly, this Court should deny Redfin's Motion to Transfer Venue to NDCA.

Dated: April 22, 2022                           Respectfully submitted,

*/s/ Edward R. Nelson III*
EDWARD R. NELSON III
State Bar No. 00797142
ed@nelbum.com
BRENT N. BUMGARDNER
State Bar No. 00795272
brent@nelbum.com
CHRISTOPHER G. GRANAGHAN
State Bar No. 24078585
chris@nelbum.com
JOHN P. MURPHY
State Bar No. 24056024
murphy@nelbum.com
CARDER W. BROOKS
State Bar No. 24105536
carder@nelbum.com
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111

**COUNSEL FOR PLAINTIFF**
**R2 SOLUTIONS LLC**

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule CV-5, I hereby certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF filing system, which will generate and send an e-mail notification of the filing to all counsel of record on this the 22nd day of April, 2022.

*/s/ Edward R. Nelson III*

**CERTIFICATE OF MOTION TO SEAL**

Pursuant to Local Rule CV-5(a)(7), I hereby certify that an unopposed motion to seal was electronically filed with the Clerk of Court using the CM/ECF filing system on this the 22nd day of April, 2022 to file under seal Exhibit 2 and Exhibit D.

*/s/ Edward R. Nelson III*